

FILED

MAR 1 4 2019

RORY L. PERRY II, CLERK
U.S. District Court
Southern District of West Virginia

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

|  |  |
|---|---|
| MICHAEL H. HOLLAND, MICHAEL McKOWN, WILLIAM P. HOBGOOD, MARTY HUDSON, JOSEPH R. RESCHINI, CARL E. VANHORN and GAIL R. WILENSKY, as Trustees of the UNITED MINE WORKERS OF AMERICA COMBINED BENEFIT FUND, MICHAEL H. HOLLAND, MICHAEL McKOWN, JOSEPH R. RESCHINI and CARLO TARLEY, as Trustees of the UNITED MINE WORKERS OF AMERICA 1992 BENEFIT PLAN, and MICHAEL H. HOLLAND, MARTY HUDSON, MICHAEL McKOWN and JOSEPH R. RESCHINI, as Trustees of the UNITED MINE WORKERS OF AMERICA 1993 BENEFIT PLAN, 2121 K Street, N.W. Suite 350 Washington, D.C. 20037, | #CHAR015627 |
|  | Civil Action No.  3:19-0180 |
| Plaintiffs, |  |
| v. |  |
| TRANS-MED, LLC 708 Central Avenue Barboursville, WV 25504, |  |
| Defendant. |  |

## COMPLAINT

Plaintiffs, Trustees of the United Mine Workers of America ("UMWA") Combined

Benefit Fund, UMWA 1992 Benefit Plan, and UMWA 1993 Benefit Plan ("the UMWA Health

Plans"), by undersigned counsel, for their complaint against Defendant, allege as follows:

## JURISDICTION AND VENUE

1

1. This is an action to collect amounts owed by Defendant as a result of fraudulently misrepresented and overpaid claims for non-emergency transport services, together with interest, attorneys' fees and costs.

2. This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*. This Court has jurisdiction over this action under Sections 502(e) and 502(f) of ERISA, 29 U.S.C. §§ 1132(e), and 1132(f).

3. This Court also has jurisdiction over this action under 28 U.S.C. § 1332 in that the UMWA Health Plans' principal place of business is 2121 K Street, NW, Washington, DC 20037, Defendant is a limited liability company organized in West Virginia with its principal office at 708 Central Avenue, Barboursville, West Virginia 25504, and the amount in controversy exceeds $75,000.

4. Venue lies in this Court under Sections 502(e)(2) of ERISA, 29 U.S.C. §§ 1132(e)(2), and 28 U.S.C. § 1391 in that the defendant's principal place of business is in Baboursville, West Virginia, which is located in Cabell County, in the Southern District of West Virginia (Huntington Division).

**PARTIES**

5. Plaintiffs are Trustees of the UMWA Health Plans. The Trustees administer the UMWA Health Plans with its principal place of business at 2121 K Street, NW, Washington, DC 20037.

6. The Trustees are fiduciaries with respect to the UMWA Health Plans within the meaning of Section 3(21) of ERISA, 29 U.S.C. § 1002(21), and are collectively the plan sponsor of the UMWA Health Plans within the meaning of Section 3(16)(B)(iii), 29 U.S.C. 1002(16)(B)(iii).

2

7. The Trustees are authorized to bring this action by Section 502(a)(3) of ERISA, 29 U.S.C. §§ 1132(a)(3). The UMWA Health Plans are multiemployer plans within the meaning of Section 3(37) of ERISA, 29 U.S.C. §§ 1002(37). The UMWA Health Plans provide health benefits to eligible beneficiaries ("Health Plan Beneficiaries").

8. Defendant, Trans-Med, LLC ("Trans-Med") is a limited liability company organized in West Virginia with its principal office at 708 Central Avenue, Barboursville, West Virginia 25504.

## FACTS

9. On July 13, 2012, the UMWA Health Plans, through its Director of Operations, William Chisholm, and Trans-Med, through its owner/partner Beverly Miller, entered into a Medical Transportation Network Preferred Provider Agreement ("the Agreement"). The Agreement is attached hereto as Exhibit A.

10. The Agreement provides that Trans-Med is in the business of providing medical transportation and other services.

11. The Agreement provides that the UMWA Health Plans has established a nonexclusive network of preferred providers to provide for the delivery of medical transport services to Health Plan Beneficiaries.

12. The Agreement provides that UMWA Health Plans and Trans-Med agree that the UMWA Health Plans will pay Trans-Med for medical transportation services that Trans-Med provides to Health Plan Beneficiaries in accordance with the rates set forth in the Fee Schedule attached to and incorporated by reference into the Agreement.

13. The Fee Schedule attached to the Agreement provides the following:

**Rate Schedule**
**Non-Emergency Transportation Services**

3

*No additional payment for a disoriented beneficiary or beneficiary requiring
other assistance. Provider to bill actual miles (to the nearest whole mile) for
beneficiary transport.*

Provider agrees to reimbursement for services at the rates established by the
Funds. At the onset of this Agreement reimbursement rates and billing codes
shall be as follows:

<u>Van Service</u> (**ambulatory beneficiary**)
Base Rate ----------------$28.75 per pick up
Mileage Rate ------------$1.50 per mile

Billing Code A0110 – Base Rate Charge
Billing Code A0080 – Mileage Charge

<u>Wheelchair Van Service</u> (**beneficiary confined to wheelchair**)
Base Rate ---------------$34.50 per pick up
Mileage Rate -----------$1.50 per mile

Billing Code A0130 – Base Rate Charge
Billing Code A0080 – Mileage Charge

<u>Not for Profit Transportation System</u> (mini-bus, mountain area transports, or
other transportation systems)

$1.00 per mile with a minimum of $9.00 per transport

Billing Code A0120 – Mileage Charge

## **Taxi**

Reimbursement based on a flat rate for a range of miles.
No additional payment for additional passenger(s) or wait time.

Billing Code A0100

| | |
|---|---|
| $6.00 | 0 - 5 miles |
| $12.00 | 6 - 10 miles |
| $18.00 | 11 - 25 miles |
| $30.00 | 26 - 50 miles |

For miles above 50 - $6.00 for each 5 miles, up to a maximum of $75.00 per
one way trip.

4

14. The Agreement further provides that it is governed by ERISA, and if it is determined by a court of competent jurisdiction that ERISA does not apply, the law of the District of Columbia controls without giving effect to conflict of laws principles.

15. During a routine audit of randomly-pulled claims for non-emergency medical transportation in February 2017 through May 2017, the UMWA Health Plans observed that the mileage amount claimed by Trans-Med was disproportionately high in comparison to the actual mileage between destinations.

16. In February 2017, a UMWA Health Plans staff member contacted Beverly Miller in her capacity as the owner/partner of Trans-Med, and Ms. Miller reported that it was Trans-Med's standard practice to bill a base rate of 50 miles per trip versus actual miles.

17. On June 1, 2017, a UMWA Health Plans staff member spoke with Ms. Miller and explained that a review of the mileage on all non-emergency medical transportation claims submitted by Trans-Med from January 2015 to date was taking place because of discrepancies in the billed mileage. Ms. Miller acknowledged she was aware of the situation and that since March 2017 Trans-Med had ceased billing the UMWA Health Plan at a base rate of 50 miles per trip in contravention of the Agreement. The staff member informed her that upon completion of the review, the UMWA Health Plans would notify Trans-Med of the overpayment amount.

18. The UMWA Health Plans' audit revealed that the UMWA Health Plans had overpaid Trans-Med in the amount of $197,131.00. This overpaid amount was due primarily to the discrepancy between actual mileage per transport versus Trans-Med's improper application of a base rate of 50 miles per transport regardless of distance traveled, but also included billed trips that had no medical claim attached.

19. By letter dated October 19, 2017, the UMWA Health Plans, via their claims administrator, HealthSmart Benefit Solutions ("HBS"), informed Trans-Med that it had been overpaid for claims submitted between January 2015 to March 2017 in the amount of $197,131.00.  Trans-Med was given the option of refunding the entire amount owed or repaying the balance due over time pursuant to a repayment plan. The letter also noted that if Trans-Med did not agree with the results of the review, it should submit documentation supporting its reasons for disagreement within 30 days.

20. Trans-Med did not dispute the overpayment amount and requested a payment plan for the overpayment from HBS.

21. By letter dated January 30, 2018, HBS sent a payment plan to Ms. Miller, which scheduled monthly payments from February 1, 2018 through January 1, 2020.

22. Trans-Med failed to make any payments to satisfy the $197,131.00 overpayment.

23. On February 26, 2019, Ms. Miller informed a UMWA Health Plans staff member via telephone call that she was moving to Florida, and Trans-Med would cease providing services as of March 8, 2019.

24. On March 4, 2019, UMWA Health Plans staff members contacted Trans-Med to inquire about payment of the overpayment. Ms. Miller acknowledged that as owner/partner of Trans-Med she received the January 30, 2018 letter, that Trans-Med had made no payments to satisfy the overpayment and it did not intend to reimburse the UMWA Health Plans for the overpayment.

## COUNT I

### (ERISA)

25. Plaintiffs incorporate herein by reference the allegations contained in Paragraphs 1-24.

26. Section 404 of ERISA, 29 U.S.C. §1104, provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and – (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries…(D) in accordance with the documents and instruments of the plan…."

27. Section 502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3), provides that a civil action may be brought by a fiduciary "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan.."

28. The facts establish that Trans-Med's improper billing caused the UMWA Health Plans to overpay Trans-Med for transportation services rendered to Health Plan Beneficiaries.

29. By refusing to repay the amounts to which it is not entitled, Trans-Med has caused the UMWA Health Plans to expend trust assets in the amount of $197,131.00 in violation of the terms of the UMWA Health Plans. The Trustees are entitled to recover these trust assets from Trans-Med on behalf of the UMWA Health Plans.

## COUNT II

### (Breach of Contract)

30. Plaintiffs incorporate herein by reference the allegations contained in Paragraphs 1-29.

31. A valid contract (the Agreement) existed between the Plaintiffs and Defendant.

32. Trans-Med had a duty to only bill or make claims for transportation services in accordance with the Agreement.

33. Trans-Med breached that duty by misrepresenting the number of miles driven during transportation services in its claims for reimbursement from the UMWA Health Plans.

34. In direct result, the UMWA Health Plans sustained monetary damages in the amount of $197,131.00.

35. Therefore, Trans-Med has breached its contract with the UMWA Health Plans, thereby causing them monetary damage in the amount of $197,131.00.

### COUNT III

(Unjust Enrichment)

36. Plaintiffs incorporate herein by reference the allegations contained in Paragraphs 1-35.

37. Upon information and belief, Trans-Med intentionally and improperly overbilled the UMWA Health Plans and caused the UMWA Funds to unwittingly overpay Trans-Med in the amount of $197,131.00.

38. The UMWA Health Plans have notified Trans-Med of its indebtedness to the UMWA Health Plans as a result of the overpayments made to it.

39. Trans-Med has no entitlement to the amounts paid to it in excess of what was provided for in the Agreement, and Trans-Med has made no effort to repay the debt.

40. As a result of the overpayment made to Trans-Med, Trans-Med has been unjustly enriched in the amount of $197,131.00 to the detriment of the UMWA Health Plans.

41. Because it is inequitable and contrary to the public interest to allow the Defendant to benefit from the above-noted transactions, Defendant is liable to the UMWA Health

Plans, under federal common law, to the extent that Trans-Med has been unjustly enriched to the detriment of the UMWA Health Plans.

## COUNT IV

### (Fraudulent Misrepresentation)

42. Plaintiffs incorporate herein by reference the allegations contained in Paragraphs 1-41.

43. Trans-Med fraudulently misrepresented the mileage amounts in the claims submitted to the UMWA Health Plans from January 2015 to March 2017 for reimbursement pursuant to the Agreement.

44. Trans-Med made false representations regarding the number of miles driven for its claims submitted to the UMWA Health Plans between January 2015 and March 2017.

45. The number of miles driven is a material fact, in that it was specifically agreed to between the Plaintiffs and Defendant that Defendant was to bill only for the actual miles driven in addition to charging an applicable base rate.

46. Trans-Med was aware that it did not actually transport Health Plan Beneficiaries the number of miles it claimed payment for in the claims for reimbursement detailed above.

47. By submitting the claims for more miles than actually driven, Trans-Med intended to deceive the UMWA Health Plans and induce payment for mileage not driven.

48. The UMWA Health Plans relied on the mileage asserted in the claims by Trans-Med and paid Trans-Med in accordance with the mileage it falsely represented.

49. Therefore, Trans-Med made fraudulent misrepresentations to the UMWA Health Plans, thereby causing them monetary damage in the amount of $197,131.00.

**WHEREFORE**, the Trustees demand the following relief:

(i)       a preliminary injunction enjoining the Defendant from disposing of any assets;

9

(ii)     a permanent injunction upon hearing of this cause, enjoining the Defendant from

disposing of any assets until the terms of the Agreement are complied with;

(iii)    a judgment against Defendant in the amount of $197,131.00, together with

interest thereon, and reasonable attorneys' fees and costs, as required by Section

502 of ERISA, 29 U.S.C. 1132(g);

(iv)    that the Court retain jurisdiction of this case pending compliance with its orders;

and

(v)     such other and further relief as the Court may deem just.

Respectfully submitted,

GARY COLLIAS
W.Va. Bar No. 784
P.O. Box 70007
122 Capitol Street, Suite 300
Charleston, WV  25301-0007
Telephone: (304) 344-3653
Fax: (304) 345-3883
Email: gacollias@colliaslaw.com

JERRY MIMS
Associate General Counsel

ABIGAIL A. PETOUVIS
Assistant General Counsel
UMWA HEALTH & RETIREMENT FUNDS
Office of the General Counsel
2121 K Street, N.W.
Washington, D.C.  20037
Telephone: (202) 521-2357
Fax: (202) 530-4090
Email: apetouvis@umwafunds.org

Attorneys for Plaintiffs